UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| FLORENCE ARDOIN, | § | |
| | § | |
| Plaintiff, | § | |
| VS. | § | CIVIL ACTION NO. 4:18-CV-2192 |
| | § | |
| STRYKER CORPORATION, *et al*, | § | |
| | § | |
| Defendants. | § | |

## MEMORANDUM AND ORDER

Before the Court are Defendant Howmedica Osteonics Corporation's Motion to Dismiss and Plaintiff Florence Ardoin's Motion for Leave to File Plaintiff's Third Amended Complaint. (Doc. Nos. 24, 26). After considering both Motions and all applicable law, the Court determines that Defendant's Motion to Dismiss must be **GRANTED in part and DENIED in part**, and Plaintiff's Motion for Leave to Amend must be **DENIED**.

## I. BACKGROUND

Plaintiff underwent a right total hip arthroplasty in 2015. (Doc. No. 23 ¶ 6). The surgeon, Dr. Christopher K. Smith, implanted an artificial hip system called the Stryker Secur-Fit Max System ("System"), which is manufactured, marketed, and sold by Defendant. *Id.* The System is made up of four parts: a Stryker Trident Cluster PSL Acetabular Shell ("Acetabular Shell"), a Trident 0 Degree Polyethylene Insert, a Stryker Secur-Fit Max Femoral Stem, and a 36 mm +5 Biolox ceramic head. *Id.* The System also used Torx Cancellous Bone Screws ("Bone Screws"). *Id.*

In the spring of 2016, Plaintiff started experiencing pain in her lower back and right hip. *Id.* ¶ 7. Plaintiff went to see Dr. Smith, who referred her to Dr. Carl Hicks for a revision surgery. *Id.* Plaintiff underwent a revision surgery with Dr. Hicks. *Id.* ¶ 8. Dr. Hicks reported after the

1

surgery that the Acetabular Shell had loosened and two Bone Screws were broken. *Id.* Dr. Hicks implanted a new acetabular cup with three bone screws. *Id.*

This case was removed from state court to this Court. (Doc. No. 1). Plaintiff filed a First Amended Complaint once the case was removed, properly replacing the originally named defendant with Defendant Howmedica. (Doc. No. 6). Defendant filed a first Motion to Dismiss soon after. (Doc. No. 13). The Court granted Defendant's first Motion to Dismiss and granted Plaintiff leave to amend. Plaintiff has since filed her Second Amended Complaint (Doc. No. 23), and now before the Court is Defendant's second Motion to Dismiss (Doc. No. 24). Plaintiff has also filed a Motion for Leave to File Third Amended Complaint requesting leave to amend on any claims that the Court dismisses. (Doc. No. 26).

## II. <u>LEGAL STANDARD</u>

A. <u>Motion to Dismiss</u>

Federal Rule of Civil Procedure 12(b)(6) provides for the dismissal of a complaint that "fail[s] to state a claim upon which relief can be granted." FED. R. CIV. P. 12(b)(6). To survive a Rule 12(b)(6) motion to dismiss, a complaint must contain sufficient factual matter to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Well-pleaded factual allegations in the complaint must be accepted as true and must be viewed "in the light most favorable to the plaintiff[]." *Dorsey v. Portfolio Equities, Inc.*, 540 F.3d 333, 338 (5th Cir. 2008). However, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678. Courts do not accept as true "conclusory allegations, unwarranted factual inferences, or legal conclusions." *In re Great Lakes Dredge &*

*Dock Co. LLC*, 624 F.3d 201, 210 (5th Cir. 2010) (quoting *Ferrer v. Chevron Corp.*, 484 F.3d 776, 780 (5th Cir. 2007)).

Federal Rule of Civil Procedure 8(a) generally controls pleading requirements, calling for "a short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2). However, in cases alleging fraud or mistake, the heightened pleading requirements of Rule 9(b) apply. FED. R. CIV. P. 9(b). Under Rule 9(b), "a party must state with particularity the circumstances constituting fraud or mistake." *Id.*; *see also Matter of Life Partners Holdings, Inc.*, 926 F.3d 103, 116–17 (5th Cir. 2019). In the Fifth Circuit, the Rule 9(b) pleading standard requires that the complaint contain factual allegations for the "time, place, and contents of the false representations, as well as the identity of the person making the misrepresentation and what [that person] obtained thereby." *Life Partners*, 926 F.3d at 117 (alteration in the original) (quoting *Tuchman v. DSC Comm'ns Corp.*, 14 F.3d 1061, 1068 (5th Cir. 1994)). In other words, the plaintiff must plead "the who, what, when, where, and why" of the alleged fraudulent conduct. *Id.*

B. <u>Motion for Leave to Amend</u>

Under Federal Rule of Civil Procedure 15(a), a district court "should freely give leave [to amend] when justice so requires." FED. R. CIV. P. 15(a)(2). Rule 15 "evinces a bias in favor of granting leave to amend." *Jones v. Robinson Prop. Grp., L.P.*, 427 F.3d 987, 994 (5th Cir. 2005) (quoting *Lyn-Lea Travel Corp. v. Am. Airlines, Inc.*, 283 F.3d 282, 286 (5th Cir. 2002)). However, leave to amend may be denied for reasons such as "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party . . . , [or] futility of amendment . . . ." *Thomas v. Chevron U.S.A., Inc.*, 832 F.3d 586, 591 (5th Cir. 2016) (quoting *Foman v. Davis*, 371 U.S. 178, 182 (1962)).

3

## III. <u>MOTION TO DISMISS</u>

### A. <u>Strict Liability Design Defect Claim</u>

Plaintiff has pled many instances of defective design. Although the Complaint is not entirely clear, it appears that Plaintiff alleges defective design of the Acetabular Shell (Doc. No. 23 ¶ 24), other unspecified components of the System, *id.* ¶ 25, and the Bone Screws, *id.* ¶ 26.[1] "To recover for a products liability claim alleging a design defect, a plaintiff must prove that (1) the product was defectively designed so as to render it unreasonably dangerous; (2) a safer alternative design existed; and (3) the defect was a producing cause of the injury for which the plaintiff seeks recovery." *Timpte Indus., Inc. v. Gish*, 286 S.W.3d 306, 311 (Tex. 2009).

Defendant argues that Plaintiff's alleged design defects relating to the Acetabular Shell and the Bone Screws are actually allegations of manufacturing defects, because Plaintiff describes the defects as "discrepancies" or "anomalies" and issues with the "metallurgical integrity." (Doc. No. 24, at 11–12). However, a design can contain instructions that necessarily generate discrepancies or weakness when followed; in other words, even if the manufacturer follows the instructions exactly, the instructions may be designed in a way that guarantees fluctuations in quality. *See De Los Santos v. Ford Motor Co.*, No. 04-14-00562-CV, 2015 WL 3776389, at *4 (Tex. App. June 17, 2015) (finding that design that called for a type of steel that became "embrittled" during a heat-treating process was a design defect, rather than a manufacturing defect). Although Plaintiff's complaint is not abundantly detailed, the Court takes the alleged facts as true: that the Acetabular Shell's design included discrepancies and anomalies, and that the Bone Screws were designed with

---

[1] It does not appear as if Plaintiff is alleging that ceramic-on-plastic hip implants, like the System, are categorically defectively designed. (*See* Doc. No. 24, at 11 n.2). However, even if she were, this claim would be dismissed because she has failed to allege facts supporting that they are broadly defective in their design.

defects to the metallurgical integrity. Thus, Plaintiff has successfully pled that the Acetabular Shell and the Bone Screws were designed in a way that was defective.

As for Plaintiff's unspecified allegations regarding other components of the System, Defendant argues that Plaintiff fails to identify any defects. Instead, Plaintiff merely alleges the effects of product failure, not the defect that caused those effects. The Court agrees. Plaintiff alleges that the "components were also defectively designed because they poorly adhered to bone, had improper seating of the ball components, and were susceptible to loosening and failure." (Doc. No. 23 ¶ 25). It is unclear both what components Plaintiff is describing, and what aspect of the components were designed defectively. Because Plaintiff has failed to describe what the design defects were outside of those alleged regarding the Acetabular Shell and Bone Screws, the Court dismisses any claims of defective design for the unspecified System components.

For the surviving allegations of design defect in the Acetabular Shell and Bone Screws, Plaintiff has also successfully pled safer alternative designs. Defendant argues that Plaintiff only provides "conclusory allegations" that the products should not have had the defects alleged. (Doc. No. 24, at 13; Doc. No. 27, at 4). However, Plaintiff's allegations that the components could have been alternatively designed in a safer manner such that they did not contain discrepancies or metallurgical weaknesses must be accepted as true at the motion to dismiss stage. The cases that Defendant cites in support of its position all involve pleadings that provided *no* alternative designs or failed to allege necessary elements to support feasible alternative designs. *See Williams v. Apple Inc.*, No. H-19-782, 2019 WL 2057960, at *3 (S.D. Tex. May 9, 2019) (failed to plead any facts about alternative designs); *Rodriguez v. Gilead Scis., Inc.*, No. 2:14-CV-324, 2015 WL 236621, at *3 (S.D. Tex. Jan. 16, 2015) (same); *see also Barragan v. Gen. Motors LLC*, SA-15-CV-854, 2016 WL 3519675, at *4–5 (W.D. Tex. June 22, 2016) (did not allege that alternative designs would

reduce risk or death or that they were economically or technologically feasible). Although Plaintiff's safer alternative designs are not particularly detailed, she provides alternative designs and alleges that they were economically and technologically feasible. These claims are pled well enough to survive a motion to dismiss.[2] Because Plaintiff also successfully pleads that the design defects caused her injuries, and Defendant does not dispute this element of the claim, Plaintiff has successfully pled design defect claims. The Court denies Defendant's Motion to Dismiss as to Plaintiff's design defect claims regarding the Acetabular Shell and the Bone Screws.

B. Strict Liability Manufacturing Defect Claim

Plaintiff pleads manufacturing defect claims in the alternative. To assert a claim of defective manufacturing, Plaintiff must show that the product "deviates, in its construction or quality, from the specifications or planned output in a manner that renders it unreasonably dangerous." *Cooper Tire & Rubber Co. v. Mendez*, 204 S.W.3d 797, 800 (Tex. 2006). The Court agrees with Defendant that Plaintiff may not rely on speculative statements or *res ipsa loquitur* in pleading a plausible claim for relief. (Doc. No. 24, at 14–15); *see Funk v. Stryker Corp.*, 631 F.3d 777, 782 (5th Cir. 2011) (holding that plaintiff may not rely on *res ipsa loquitur* to make manufacturing defect claim). Defendant is also correct that, under Texas law, the mere fact that a product failed is not enough to infer proof of a product defect. *See Cooper Tire*, 204 S.W.3d at 807; *Ford Motor Co. v. Ridgway*, 135 S.W.3d 598, 601 (Tex. 2004). However, Plaintiff has pled enough facts alleging the existence of manufacturing defects to survive a motion to dismiss. In her

---

[2] Plaintiff also alleges in her Response that metal-on-plastic, metal-on-metal, or ceramic-on-ceramic hip implants are safer alternative designs. (Doc. No. 25, at 14). Because Plaintiff has not pled any facts alleging that ceramic-on-plastic hip implants are defective in design, nor any facts that explain how these types of implants could be alternative designs that avoid the alleged design defects in Defendant's product, the Court rejects these alternative designs. However, they are not necessary for Plaintiff's claim to survive this motion.

Complaint, Plaintiff alleges that the Acetabular Shell was manufactured with discrepancies, the ball components were manufactured with improper seating, and that the Bone Screws did not meet the metallurgy integrity requirements set by federal law and regulation.[3] (Doc. No. 23 ¶¶ 41–43). Although Plaintiff's factual allegations are not particularly detailed, when taken as true, she alleges more than just the mere fact of that the System failed. Because Plaintiff has alleged facts showing that components of Defendant's hip implant were manufactured defectively, the Court denies Defendant's Motion to Dismiss as to Plaintiff's manufacturing defect claims.

    C. <u>Strict Liability Marketing Defect Claim</u>

Plaintiff also brings marketing defect claims against Defendant for marketing the System without warning both Plaintiff and her implanting surgeon, Dr. Smith, about the known dangers of the product. To prevail on a marketing defect claim, Plaintiff must show that Defendant's warning was defective and that the defective warning was a producing cause of Plaintiff's injuries. *In re DePuy Orthopaedics, Inc., Pinnacle Hip Implant Prod. Liability Lit.*, 888 F.3d 753, 772 (5th Cir. 2018). Where the product in question is provided to the end user through a prescribing physician, such as with prescription drugs or medical devices, Texas law applies the learned intermediary doctrine. *See Centocor, Inc. v. Hamilton*, 372 S.W.3d 140, 157 (Tex. 2012). Under the learned intermediary doctrine, the product manufacturer need only provide adequate warnings to the intermediary physicians and has no further duty to warn the end users directly. *Id.* To sustain a claim where the learned intermediary doctrine applies, a plaintiff must show "that, but for the inadequate warning, [her] doctors would have recommended different treatment, or provided

---

[3] Plaintiff also alleges that the hip implant was defectively manufactured in that it "poorly adhered to bone" and "was susceptible to loosening and failure." (Doc. No. 23 ¶ 42). These vague allegations fail to describe what exactly was defective and how the manufacturing process brought about that defect. Thus, any claims based on these two allegations fail to survive the Motion to Dismiss.

7

additional warnings that would have led plaintiff[] to withhold consent." *DePuy Orthopaedics*, 888 F.3d at 774 (citations omitted). Because the learned intermediary doctrine applies to this case, Plaintiff's claims that Defendant failed to warn her directly are not cognizable, and thus, are dismissed.

However, Plaintiff has successfully pled claims that Defendant failed to warn Dr. Smith. Plaintiff alleges that Defendant did not warn Dr. Smith of known defects associated with the Acetabular Shell, Bone Screws, and other components, and that, if Dr. Smith had been warned, he would have changed the information that he gave Plaintiff before the surgery, including his recommendation, and Plaintiff would not have consented to the System. Because the Court must take these alleged facts as true at the motion to dismiss stage, Plaintiff has successfully pled the elements of a marketing defect claim. Thus, the Court denies Defendant's Motion to Dismiss as to Plaintiff's claims that Defendant defectively marketed its product to Dr. Smith. The Court, however, grants Defendant's Motion to Dismiss as to Plaintiff's claims that Defendant defectively marketed its product to her directly.

   D. <u>Negligence Claim</u>

Plaintiff also pleads negligence claims based on the same facts as her strict liability claims. To prevail on a claim of negligence, Plaintiff must show: "(1) the existence of a duty on the part of one party to another; (2) the breach of that duty; and (3) the injury to the person to whom the duty is owed as a proximate result of the breach." *Romo v. Ford Motor Co.*, 798 F. Supp. 2d 798, 807 (S.D. Tex. 2011) (quoting *Dion v. Ford Motor Co.*, 804 S.W.2d 302, 309 (Tex. App. 1991)). Under Texas law, where negligence claims are only based on the allegations that a product is unreasonably dangerous, "the negligence theories are subsumed by the strict liability theories

asserted." *Id.* at 808. The Court will assume at this stage that Plaintiff is pleading her negligence claim in the alternative.

Defendant argues that, because Plaintiff failed to adequately plead any defects in Defendant's product, Plaintiff cannot hold Defendant liable for the product under a negligence theory. (Doc. No. 24, at 17) (citing *Garrett v. Hamilton Standard Controls, Inc.*, 850 F.2d 253, 257 (5th Cir. 1988)). However, because the Court has found that Plaintiff has sufficiently pled that Defendant's product was defective, Defendant's argument does not apply. Plaintiff's factual allegations set forth in her strict liability claims are enough to plausibly support the elements of her negligence claims. Thus, the Court denies Defendant's Motion to Dismiss as to Plaintiff's negligence claims.

E. <u>Breach of Implied Warranties Claim</u>

Plaintiff alleges that Defendant breached the implied warranty of merchantability.[4] To assert a claim for breach of implied warranty of merchantability, Plaintiff must show "(1) the merchant sold goods to the plaintiff; (2) the goods were unmerchantable and 'unfit for the ordinary purposes'; (3) the plaintiff notified the defendant of the breach; and (4) the plaintiff suffered injury." *Williams v. Apple Inc.*, No. H-19-782, 2019 WL 2057960, at *4 (S.D. Tex. May 9, 2019) (quoting *Omni USA, Inc. v. Parker-Hannifin Corp.*, 964 F. Supp. 2d 805, 816 (S.D. Tex. 2013)).

Defendant first argues that Plaintiff failed to provide proper notice of the breach. Under Texas law, a party asserting breach of warranty "must within a reasonable time after [s]he

---

[4] Plaintiff seems to allege that Defendant breached multiple implied warranties. (Doc. No. 23 ¶¶ 71–74). However, she does not clearly state which warranties she refers to. She does allege that Defendant "impliedly warranted that [the System] was merchantable and fit for the ordinary purpose for which it was intended." (Doc. No. 23 ¶ 64). Because Plaintiff appears to be alleging breach of the implied warranty of merchantability, and because she does not object to Defendant's assumption that that is the only warranty for which she alleges breach, this Court will only address claims for breach of the implied warranty of merchantability.

9

discovers or should have discovered any breach notify the seller of breach or be barred from any remedy." TEX. BUS. & COMM. CODE ANN. § 2.607(c)(1). Notice need not "set forth in detail every objection the buyer has to the fitness of the product." *Lochinvar Corp. v. Meyers*, 930 S.W.2d 182, 189 (Tex. App. 1996) (citing *Carroll Instrument Co. v. B.W.B. Controls, Inc.*, 677 S.W.2d 654, 657 (Tex. App. 1984)). Rather, the manufacturer need only "be made aware of a problem with a particular product purchased by a particular buyer." *U.S. Tire-Tech, Inc. v. Boeran, B.V.*, 110 S.W.3d 194, 202 (Tex. App. 2003). A general expression of dissatisfaction may be enough to fulfill the notice requirement. *Hull v. S. Coast Catamarans, L.P.*, 365 S.W.3d 35, 44 (Tex. App. 2011) (citing *U.S. Tire-Tech*, 110 S.W.3d at 201); *Lochinvar Corp.*, 930 S.W.2d at 190.

Plaintiff has pled enough facts alleging that she provided notice to survive a motion to dismiss. Plaintiff sent Defendant a notice letter pursuant to the notice requirements of the Texas Deceptive Trade Practices Act on July 6, 2017. (Doc. No. 27-1). The letter briefly described the issues that Plaintiff had with the System and attached operative reports from both the original surgery and the revision surgery. *Id.* at 2. The letter also listed three provisions of the Act under which Plaintiff intended to file DTPA claims. *Id.* The letter did not mention any claims of breach of implied warranty. However, it did contain enough information about Plaintiff's "dissatisfaction" with Defendant's product to provide Defendant with notice "of a problem with a particular product purchased by a particular buyer." Because notice is ordinarily a question of fact, *Hull*, 365 S.W.3d at 44, and because Plaintiff has successfully alleged facts that reach the standard required to survive a motion to dismiss, Defendant's argument about deficient notice fails.

Defendant also argues that, because the hip replacement in question is made up of component parts, privity is required for Plaintiff to assert a claim of breach of implied warranty. Defendant relies on *Hininger v. Case Corporation*, 23 F.3d 124 (5th Cir. 1994), a case involving

an implied warranty claim for economic loss against a component manufacturer. *Hininger* is not applicable to this case. The Texas Supreme Court has held that privity of contract is not required for an implied warranty action for personal injuries. *Garcia v. Tex. Instruments, Inc.*, 610 S.W.2d 456, 465 (Tex. 1980). *Hininger* does not address actions for personal injuries; indeed, the opinion repeatedly emphasizes that the Fifth Circuit is deciding a claim for economic loss. Thus, Plaintiff does not need to plead privity,[5] and, because she has sufficiently plead the four elements of her claim, the Court denies Defendant's Motion to Dismiss Plaintiff's breach of implied warranty claim.

   F.  Deceptive Trade Practices Act Claim

Plaintiff alleges that Defendant has violated the Texas Deceptive Trade Practices Act (DTPA) in three actionable ways: through misrepresentations, unconscionable conduct, and breach of warranties. Defendant argues that Plaintiff's DTPA claims should be dismissed because she has failed to allege facts with the particularity necessary to meet the heightened pleading standard of Federal Rule of Civil Procedure 9(b). To establish a DTPA claim, a plaintiff must prove: "(1) the plaintiff was a consumer; (2) the defendant either engaged in false, misleading, or deceptive acts (i.e., violated a specific laundry-list provision of the DTPA) or engaged in an unconscionable action or course of action; and (3) the DTPA laundry-list violation or unconscionable action was a producing cause of the plaintiff's injury." *Bus. Staffing, Inc. v. Jackson Hot Oil Serv.*, 401 S.W.3d 224, 236 (Tex. App. 2012). The heightened pleading standard required by Rule 9(b) for claims

---

[5] *Hininger* is also distinguishable because it involved a case where the defendant was a separate entity from the company that sold the final product. In *Hininger*, the Fifth Circuit relied on the fact that plaintiffs had no relationship with the defendant component manufacturer and thus, had no expectation that the defendant company would resolve any problems that arose with the final product. 23 F.3d at 129. As Defendant has acknowledged, all components at issue in this case were manufactured by Defendant. Thus, Plaintiff likely had expectations that Defendant would be responsible for resolving defects.

asserting fraud applies to DTPA claims, regardless of the provision invoked. *Gonzalez v. State Farm Lloyds*, 326 F. Supp. 3d 346, 350 (S.D. Tex. 2017); *Omni USA, Inc. v. Parker-Hannifin Corp.*, 798 F. Supp. 2d 831, 836–37 (S.D. Tex. 2011). Plaintiff does not dispute that the heightened pleading standard applies to her DTPA claim. (Doc. No. 25, at 22).

The Court agrees that Plaintiff has failed to plead her claims of misrepresentation with the specificity required to satisfy Rule 9(b). Plaintiff fails to specify who made misstatements to her or Dr. Smith,[6] when those misstatements were made, or what form those misstatements took. To reach the requisite level of particularity, Plaintiff needed to name the individuals who made false representations to her or Dr. Smith, and recount specific statements that were false representations. *See Sullivan v. Leor Energy, LLC*, 600 F.3d 542, 551 (5th Cir. 2010) (dismissing state law fraud claims under Rule 9(b) standard for failure to "allege who at the company made the statements or when or where they occurred"); *Benchmark Elecs., Inc. v. J.M. Huber Corp.*, 343 F.3d 719, 724 (5th Cir. 2003) (naming individual investment bankers and representatives who made allegedly false or misleading statements); *Lopez v. United Prop. & Casualty Ins. Co.*, 197 F. Supp. 3d 944, 952 (S.D. Tex. 2016) (dismissing because "[Lopez] does not point to any specific statements that would satisfy Rule 9(b)'s requirements"). Plaintiff does neither.

Additionally, the Court agrees that Plaintiff has failed to plead a claim of unconscionable action under the DTPA. To prove an unconscionable action, a plaintiff must show that (1) the defendant took advantage of her lack of knowledge, and (2) that "the resulting unfairness was

---

[6] To the extent that Plaintiff is alleging that Defendant failed to warn her directly, her claims fail, just as they fail under a common law marketing or warning defect claim, because of the application of the learned intermediary rule. *See Gonzalez v. Bayer Healthcare Pharm., Inc.*, 930 F. Supp. 2d 808, 814 (S.D. Tex. 2013) (citing *Centocor, Inc. v. Hamilton*, 372 S.W.3d 140, 169 (Tex. 2012)) (applying the learned intermediary rule to DTPA claims based in a manufacturer's failure to warn about a drug's side effects).

glaringly noticeable, flagrant, complete, and unmitigated." *Bradford v. Vento*, 48 S.W.3d 749, 760 (Tex. 2001) (quoting *Ins. Co. of N. Am. v. Morris*, 981 S.W.2d 667, 677 (Tex. 1998)). Plaintiff has not alleged any facts to support either of these elements.

Finally, Plaintiff claims that Defendant "breached certain express warranties, both written and oral, and further breached certain implied warranties." (Doc. No. 23, at 21). The Court finds that Plaintiff has failed to allege that any express warranties existed.[7] However, as discussed *supra*, Plaintiff has successfully stated a claim for breach of implied warranty. The DTPA, though it does not create any warranties, provides a separate cause of action for breaches of implied warranties that are established via statute or common law. *Cont'l Dredging, Inc. v. De-Kaizered, Inc.*, 120 S.W.3d 380, 390–91 (Tex. App. 2003); *see also Tsao v. Ferring Pharm., Inc.*, No. 4:16-cv-01724, 2018 WL 3589097, at *4 n.3 (S.D. Tex. Apr. 17, 2018). Because Plaintiff was a consumer of the hip implant, sufficiently pled that Defendant breached an implied warranty, and pled that that breach caused her injuries, Plaintiff has successfully stated a claim under the DTPA for breach of implied warranty. *See SND Trucking & Roustabout, LLC v. Diesel Mach. Works, LLC*, No. 7:16-CV-056, 2016 WL 11587416, at *3–4 (W.D. Tex. Aug. 11, 2016). Thus, the Court denies Defendant's Motion to Dismiss Plaintiff's DTPA claims as to her claim of breach of implied warranty, and grants Defendant's motion as to her claims of misrepresentation and unconscionable conduct.

---

[7] Indeed, Plaintiff agreed in her Response to Defendant's first Motion to Dismiss that her common law breach of express warranty claim was not viable. (Doc. No. 15, at 13). Plaintiff does not appear to defend her claim of breach of express warranty under the DTPA in any filing in response to Defendant's second Motion to Dismiss.

G. Negligent Misrepresentation Claim

Plaintiff alleges that Defendant made negligently misleading misrepresentations and omissions, which she relied upon and thus caused her injuries. Under Fifth Circuit law, the heightened pleading standards of Rule 9(b) also apply to a negligent misrepresentation claim if that claim is based upon the same alleged misconduct as a fraud claim. *Benchmark Elecs.*, 343 F.3d at 723 (citing *William v. WMX Techs., Inc.*, 112 F.3d 175, 177 (5th Cir. 1997)). Because Plaintiff has failed to plead the facts surrounding the alleged misrepresentations with particularity, as discussed *supra* with her DTPA claims, her negligent misrepresentation claims must also be dismissed.[8]

## III. MOTION FOR LEAVE TO AMEND

While leave to amend should be freely given, leave may still be denied for a number of permissible reasons, including "repeated failure to cure deficiencies by amendments previously allowed" and "futility of amendment." *Thomas v. Chevron U.S.A., Inc.*, 832 F.3d 586, 591 (5th Cir. 2016). Plaintiff is currently seeking leave to file a Third Amended Complaint. The Second Amended Complaint was filed after the Court granted Defendant's first Motion to Dismiss. Plaintiff was given an opportunity to amend to cure any pleading deficiencies raised during the first Motion to Dismiss. The deficiencies raised in the first round of motion to dismiss briefings included failure to plead sufficient facts under a Rule 9(b) standard for Plaintiff's DTPA claims. Plaintiff has again failed to plead facts with sufficient particularity to support her DTPA misrepresentation and unconscionable conduct claims under a Rule 9(b) pleading standard. While

---

[8] Defendant also argues in its Motion to Dismiss that Texas has not adopted a theory of recovery for personal injuries under negligent misrepresentation claims. (Doc. No. 24, at 19–21) (citing *Butler v. Juno Therapeutics, Inc.*, No. H-18-898, 2019 WL 2568477, at *24–25 (S.D. Tex. June 21, 2019)). Because Plaintiff has not sufficiently pled her negligent misrepresentation claim, the Court need not decide whether Texas courts have adopted such a theory of recovery.

14

Plaintiff's negligent misrepresentation claims were raised for the first time in her Second Amended Complaint, they are based on the same allegations and facts as Plaintiff's DTPA misrepresentation claims. Thus, Plaintiff has been given an opportunity to properly plead facts surrounding her claims of false misrepresentation and has failed to do so. This repeated failure may indicate futility — that Plaintiff cannot plead these facts with particularity may indicate that she does not have a legally viable claim. Regardless, Plaintiff has been given the opportunity to amend and failed to address the deficiencies raised in Defendant's first Motion to Dismiss. Thus, the Court denies Plaintiff's Motion for Leave to File Plaintiff's Third Amended Complaint.

## IV.   CONCLUSION

For the foregoing reasons, the Court **DENIES in part** Defendant's Motion to Dismiss as to Plaintiff's design defect claim; manufacturing defect claim; marketing defect claim, as far as she alleges that Defendant failed to warn the implanting surgeon; negligence claim; breach of implied warranty claim; and DTPA breach of implied warranty claim. The Court **GRANTS in part** Defendant's Motion to Dismiss as to Plaintiff's marketing defect claim, as far as she alleges that Defendant failed to warn Plaintiff directly; Plaintiff's DTPA misrepresentation and unconscionable conduct claims; and Plaintiff's negligent misrepresentation claims. The Court **DENIES** Plaintiff's Motion for Leave to File Plaintiff's Third Amended Complaint.

**IT IS SO ORDERED.**

**SIGNED** at Houston, Texas, on this the 7th day of October, 2019.

*/s/ Keith P. Ellison*

HON. KEITH P. ELLISON
UNITED STATES DISTRICT JUDGE